## SUPREME COURT.

FRANK F. FOWLER, plaintiff in error, ads. THE PEOPLE, defendants in error.

ιt is not necessary, on an indictment for obtaining money on *false pretences*, to *prove all* the false pretences or representations *alleged* in the indictment. If any *material portion* of them is proved, it is sufficient.

The *declarations* or *admissions* of a party are equally good as evidence, whether made *before* or *after* the offence charged against him.

It is not necessary, even on an indictment for perjury, to prove the *identical words* or *language* of the party charged; it is sufficient to prove *substantially* what he said, and all that he said, on the point in question.

The prisoner in this case, having been indicted for obtaining money by false and fraudulent pretences, in selling a false passage ticket from New-York to Bremen, and it appearing, in evidence, sufficient to submit the question to the jury, that the prisoner was acting in concert with another person, who acted as his clerk, and who carried on the negotiation, and consummated the sale with the applicant, in the German language, in the presence and hearing of the prisoner, although it was not shown that the prisoner understood the German language,

*Held, no error* in the court, in charging the jury, to say that it was not necessary, in making out false pretences, that *words alone* should be used; the pretences might be gathered from the *acts* as well as the words. A falsehood could be *acted* as effectively, in many instances, as it could be spoken.

*New - York General Term, March,* 1860.

*Present,* SUTHERLAND, ALLEN, BONNEY *and* LEONARD, *Justices.*

MOTION by defendant for a new trial on exceptions.

JAMES M. SMITH, JR., *for the plaintiff in error.*

N. J. WATERBURY, *district-attorney, for the people.*

By the court—LEONARD, Justice. Fowler was tried, at the last term of the court of oyer and terminer in the city of New-York, on an indictment charging him, together with John Gilbert, with obtaining money by false pretences from Christian Heine.

The substance of the charge is, that Fowler and Gilbert, on the 14th of October, 1859, at the said city, knowingly and falsely pretended and represented to the said Heine that a certain instrument in writing, of which a copy is hereinafter set forth, was a genuine ticket, entitling him to a passage to Bremen, that there was a steamship called the Ammonia, then lying in the port of New-York, and was then about to leave, and that Fowler and Gilbert were regular authorized agents of said ship, and authorized to sell passages thereon, and that the office occupied by them, at the corner of Chambers and West streets, was the regular office of the company and line to which the said pretended steamship belonged.

That Heine, believing the said false pretences and representations, and deceived thereby, paid Fowler and Gilbert thirty-five dollars.

The indictment then charges that these pretences and representations were false, negativing each of them, and that Fowler and Gilbert received the money with a felonious intent to cheat and defraud Heine, the complainant.

At the trial, the evidence showed that Heine arrived in this city from Illinois, by the cars, on the morning of the 14th of October, 1859, and was taken by a stranger, whom he has not since seen, to the office of the prisoner Fowler, at the corner of Chambers and West streets, where were Fowler and Gilbert, the former behind the counter and the latter in front, four or five feet apart. The stranger said in English, when they went into the office, that Heine wanted to go to Germany. Gilbert then continued the conversation with Heine in the German language, and nothing was said or done by Fowler till after the money was paid, although he was present and saw all that took place. No evidence was offered to show that Fowler understood the German language. Heine informed Gilbert that he wanted to go to Bremen in a steamer, and inquired the price. Gilbert told him the price was $35, which Heine concluded to pay, and Gilbert then filled up the blank certificate or ticket in question, on the counter, within three or four feet of Fowler, and delivered it to Heine, who paid thirty-five dollars therefor,

to Gilbert, in gold and silver coin. Fowler came round the counter and took the money from Gilbert, put it in a bag, and then put it in his pocket. When he took the money, Fowler said, " I put all that money in one bag." Gilbert told Heine he wanted to conduct him to the steamer the next day, that the ticket was all right for Bremen. This was after the money was paid.

The ticket or paper in question was then read in evidence, under objection and exception on the part of the prisoner. It was printed in red letters in an ornamental style, (except the parts italicised, which were written), and its contents were as follows :

" London, Liverpool, Havre, Hamburg and Bremen }
   Packet Office, Corner of Chambers and West streets. }
Paid $35.00.
Where passages can be engaged on reasonable terms, on regular Packet ships, including provisions.

NEW-YORK, Oct. 14, 1859.
This entitles the bearer, Mr. *Christian Aene,* to a passage this present voyage, hence to *Bremen,* in the *Steam* Ship *Ammonia.*
*F. F. FOWLER.*
To Mr. *F. F. Fowler.*
*To be exchanged* 186 *West street.*
Not transferrable.
No passage money returned."

.Fowler had a sign up at his office "' General Passage Office for California, Liverpool, London, Havre, &c.," but his name was not on the sign. Fowler had been engaged in selling passenger tickets two or three years. Gilbert and the prisoner were together at the office daily.

Fowler, after this transaction, went to the police office, on being sent for in relation to this charge, without any arrest, and, in conversation with Mr. Hartman, an interpreter employed at the police office, stated in substance, as near as witness could recollect, that this ticket had been sold at his office to accommodate a miner ; that he was sorry, and wanted to give a good ticket; that a mistake occured in writing the steamer's name.

There was no steamer of the name of " Ammonia," running from this port to Europe. The Hamburg steamship company have two steamships running from New-York to Hamburg; one of them, called the Hammonia, was in Hamburg on the 14th of October, and the other, the Teutonia, was then here, but left on the 15th of October, bound for Hamburg. The office of this line was at 151 Broadway.

The instrument in question, would not have entitled a person to a passage on any vessel of that line. Neither Fowler nor Gilbert were entitled to sell tickets for that line.

There were two offices in Greenwich street authorized to sell tickets to be exchanged at the office of this line, and papers are there issued similar to the one in question. Germans often show such tickets at this office, but they are not taken. This line pays a commission of two dollars to persons bringing them a steerage passenger, who pays them $35 for a ticket.

There is a line of steamers running from New-York to Bremen, of which Guelf & Co. are the agents, but no vessels called the Ammonia or Hammonia, or Teutonia, belong to that line. There are four steamers belonging to this line, called the Hudson, the Weser, the Bremen and the New-York. One of the agents of this line testified, that this paper in question would not entitle the holder to a passage to Bremen. Tickets, in the regular and ordinary course of business, are not directed to the parties themselves.

The line have one outside agent only, who sells certificates for passage, which are exchanged at the principal office. His office is at 75 Greenwich street. His certificates are not in the form of this one in question. They are addressed to the firm of principal agents. Heine went to the office of Fowler the next day, after the Teutonia had sailed, and saw Gilbert there, but not Fowler. Heine never asked Fowler for a ticket, after he got the paper in question.

The outside agent of the Bremen line, who keeps his office at 75 Greenwich street, was called as a witness for the prisoner, and testified that he had known such papers, issued by Fowler, to be exchanged for tickets. Never knew one of Fowler's certi-

ficates to be repudiated. If Gilbert had asked for another vessel, he could have had it. He also stated, under objection and exception by the counsel for the prisoner, that if a passenger had come with the paper in question, without money, he would not have taken it, and have given him a ticket. If he had known the paper came from Fowler, he would.

Another witness, on behalf of the prisoner, testified that he had seen such papers as the one in question, issued by Fowler, in the hands of several persons, and that, when presented, they always got good tickets for them.

Numerous questions in regard to the admissibility of evidence were raised at the trial, and an exception was also taken to a portion of the charge of the judge, and also for his refusal to charge as requested, which have been argued before the court at general term, and which are now to be considered.

Early in the trial, but after it had been ascertained that the witness (Heine) and the clerk (Gilbert) conducted the business at Fowler's office, in his presence, in the German language, which Fowler did not understand, so far as the evidence showed, Heine was asked to tell what was done by the German—referring to Gilbert.

It was objected by the counsel for the prisoner, that the acts of Fowler only were evidence, as the language used was German, and it had not then been proven that Fowler had done any act.

There had been sufficient evidence already given to make it probable that Gilbert and the prisoner were acting in concert. The nature and effect of Gilbert's acts could have been understood by Fowler, although he was ignorant of the language used; particularly so, if the two were acting in concert. This the jury were to decide. If there were any doubt as to the sufficiency of the evidence, showing the probability of their concerted action when the question was asked, it was removed by the proof, which immediately followed, that the prisoner himself took the money which Heine paid for the ticket.

The next objection urged was to the admission of the docu-

ment, which was alleged to have been sold to Heine as a ticket for a passage to Bremen.

The grounds of objection urged were, that it had not been proved that Fowler signed it, or knew its contents, or authorized it to be signed.

This paper was the subject of the alleged fraud. It was not necessary to prove that the prisoner signed it. If he knew what his clerk was doing, or about to do, it was quite sufficient. Whether he had this knowledge or not, was for the jury to inquire, if there was sufficient evidence to justify a submission of the question. The probability that the prisoner knew and authorized the acts of Gilbert, was strong. Gilbert was his clerk. Heine was brought there, and announced, in English, as a person wishing to go to Germany. The joint occupation of the office by Fowler and Gilbert, and the business ostensibly carried on; the possession of a blank of this description, showing previous preparation; the filling up of the blank within three feet of the prisoner—whether his name was then signed by Gilbert, or had been previously signed, he was near enough to see and read the paper, and to see the signature; the act of the prisoner in receiving the money, the price of the passage to which the paper purported to entitle Heine. All these facts tend to prove that the prisoner understood or authorized the transaction, and was quite sufficient to warrant the admission of the document as evidence. It was a step in the trial of the question at issue. It was the subject of the alleged false pretences. The pretences were made in regard to that paper, if at all, and whether they were false or not remained to be proved.

The third exception arises on the admission of evidence of the declarations of the prisoner, in regard to this very transaction, tending to show a *scienter*. The objection was, that the evidence was irrelevant; not that it was unduly obtained, for which there was no ground, the conversation being wholly voluntary, and while the prisoner was not even under arrest. The question is too plain to admit of argument. The only reason urged is, that it took place after the offence, and cannot

act retrospectively. It is a sufficient answer to say, that it was the prisoner's own version of his alleged offence. The declarations or admissions of a party are equally good as evidence, whether made before or after the offence. ·

The fourth objection and exception was to the admission of the substance of what the prisoner stated in the conversation last referred to, after the witness had declared his inability to give the exact language of the prisoner.

This objection is also untenable. Even on an indictment for perjury, it is not necessary to prove the identical words or language of the party charged; it is deemed sufficient to prove substantially what he said, and all that he said, on the point in question. (3 *Greenleaf*, § 194; *Snell* agt. *Moses*, 1 *J. R.* 99.)

The fifth exception was taken to a question addressed to the agent of the Hamburg Steamship Company, as follows: " Would that paper [handing him the paper hereinbefore set forth] have entitled a person to a passage on a steamer of your line ?" This witness had previously testified that there was no steamer by the name of Ammonia running from here to Europe; that there is one called the Hammonia, belonging to the line of which he was agent; that this steamer was at Hamburg on the 14th of October; that there was a steamer called the Teutonia, also belonging to this line, which was in this port on the 14th of October, and sailed for Hamburg on the next day. The previous witness had testified that Fowler had stated to him, in a conversation about this ticket, or certificate issued to Heine, that a mistake occurred in writing in the steamer's name, and that Fowler, or some one in his behalf, had stated that the name of the steamer Teutonia ought to have been in the place of " Ammonia."

The objection was made on the ground that the inquiry was irrelevant.

The question was pertinent, and the evidence called forth was relevant, to show that the excuse which Fowler offered for the sale of the paper in question to Heine, as a ticket for a passage to Bremen, was false, and thereby also to further show his fraudulent intent.

An inquiry was also made of this witness, whether Fowler or Gilbert, or either of them, were authorized to sell tickets for this line of steamers? to which the prisoner's counsel took the sixth objection and exception at the trial, on the ground of irrelevancy; but no reference was made to it at the argument of the writ of error, or upon the points of the prisoner's counsel; and, as the objection is manifestly untenable, no further reference to it here is required.

The witness, Heine, was recalled by the district attorney, and asked this question: "After you went into the office with the man who went with you from the cars, what was the first thing said in the office?"

To this inquiry the counsel for the prisoner took the seventh objection and exception, on the ground that the conversation at the office was already shown to have been in German, and that the prisoner had taken no part in it; and, it not having been made to appear that he understood it, he could not be affected thereby.

There had been much evidence previously given tending to show a concerted action between Fowler and his German clerk Gilbert—quite too much to justify the court in omitting to give such question to the jury. It was of little consequence what language was used, if Fowler knew, beforehand, what the purport and object of Gilbert's conversation was to be with those applicants who spoke in the German tongue. The first words which the witness uttered, in answer to this question, were unimportant as evidence for the people. The evidence was, that the man who went with Heine from the cars to the prisoner's office, said, in English, that Heine wanted to go to Germany. Fowler understood this statement. He was the principal—Gilbert the clerk. True, the clerk talked with Heine in German, but he filled up a ticket, in Fowler's presence, in the English language, to which his name was then, or had been previously, affixed; and a ticket in blank was at hand, previously provided and printed in an attractive style. The clerk received the money for the ticket, then filled up in Fowler's presence, and handed it immediately to Fowler, who,

apprehending an arrest, shortly afterwards stated, as an excuse, that the name of the steamer was filled in by mistake. These, besides many other circumstances, all tending to show a concerted action between the prisoner and his German clerk, appear quite sufficient to authorize the ruling which was made on this question.

The eighth objection and exception also arose upon the second examination of Heine. He was asked, " Was anything else said inside the office before you left ?"

The prisoner's counsel objected, that no foundation had been laid to charge the prisoner with the acts or declarations of the clerk. The same reasons for admitting this question existed at the trial, which were applied to the last objection. The answer was, however, favorable to the prisoner. It was, that the clerk said he wanted to conduct Heine, the next day, to the steamer, and afforded one of the principal points in the prisoner's defence. It also appeared, by the next reply of the witness, that this latter conversation occurred after the money had been paid. It was also a part of the same conversation in which the alleged fraud was committed. No request was made to the court to strike out the evidence, or to instruct the jury to disregard it. There was nothing in the reply to give rise to any ground of complaint on the part of the prisoner.

The ninth and tenth exceptions were also taken to inquiries put to this witness by the district attorney, and admitted, after objection on the part of the prisoner.

No reference was made to them at the argument of the writ of error, or on the points. Heine went to the office the next day, and asked for a ticket.

The inquiry manifestly had reference to the memorandum at the bottom of the ticket—" To be exchanged 186 West street "—and to the intent of the prisoner in the transaction with which he is charged. The answer was not unfavorable to the prisoner, and the objection may be safely dismissed without further remark.

The eleventh exception arose on an objection to an inquiry, made by the court, of the outside agent of the Bremen and

Hamburg lines of steamers, who had his office at No. 75 Green-
wich street, referred to in the foregoing statement of the facts
of the case. He had, previously to the inquiry, testified that,
if Gilbert or Fowler had come to his office with Heine, on the
morning the steamer sailed, and presented the paper put in
evidence, he would have given him a ticket for a passage on
the first steamer that went to Bremen.

It is not very apparent how this evidence could be con-
sidered as in any degree conclusive to show the good faith of
Fowler in the transaction, inasmuch as no obligation rested on
the witness to supply a ticket for this paper, and no evidence
of a claim on Fowler would arise from the possession of it by
the witness; and if he had furnished a ticket therefor, it would
have been an act purely voluntary on his part. It was a matter
resting exclusively in his own conscience, whether he would
have given these parties a ticket or not, and if the statement
was false, there was no means of detecting it, except by further
inquiry from him. He might possibly have come to an en-
tirely different conclusion, if the request for a ticket had, in
fact, been made upon him, although, when he gave his evi-
dence, he honestly believed that he would have furnished it.

The question put by the court, to which the eleventh excep-
tion was taken, was this: "If a passenger had come with that
paper, without money, would you have taken it, and given a
ticket to him?" The answer was, "No, sir!" The prisoner
had evoked similar evidence to establish a belief with the jury
that his intent was honest. The inquiry put by the court was
for the same purpose of ascertaining the intent of the prisoner.
If the paper in question was, in fact, delivered to Heine as a
ticket entitling him to a passage to Bremen, according to its
purport, then it must have been good with the Bremen line,
for there were no steamers running from this port to Bremen,
except those belonging to that line. If there was any value
in the paper, the passenger was entitled to a passage by that
line. The prisoner sought to establish his defence by proving
that this paper would have procured such a passage. He does
not attempt to show that he was an agent for any line of

steamers to Bremen, or anywhere else.   The paper purported to entitle Heine to a passage, absolutely.   True, it is added, below, that something is to be exchanged; but it was for the jury to pronounce whether this paper was put forth with a guilty knowledge, or authority, on the part of the prisoner, and with intent to defraud Heine.   The previous evidence of this witness, on this point, was far less conclusive to show the intent of the prisoner, than the evidence which the question put by the court called for.   No one can doubt that, if the answer to this question had been favorable to the prisoner, it would have gone far to acquit him on the question of intent, had the jury considered his evidence as satisfactory as that of the principal agent of the line, who had previously testified differently on the same subject.

The inquiry put by the court was to the same effect with that previously put by the prisoner's counsel.   It tended to show the intent of the prisoner, if it should be considered by the jury that he and Gilbert were acting in concert; and also to prove the value or falsity of the paper, alleged to have been falsely issued as a ticket for a passage to Bremen.   We think the inquiry was proper in this particular connection.

The court charged the jury that it was not necessary in this case, in making out false pretences, that words alone should be used—the pretences may be gathered from the acts as well as the words; and, to this proposition, the counsel for the prisoner took his twelfth exception.   The objection urged is, that the indictment has no allegation of any particular acts, independent of representations.   Neither specific acts or words are set forth in the indictment.   Such allegations, if made, would be pleading the evidence of the fact.   The facts are charged which show false pretences and representations, not the evidence of the facts, and such is the proper way to make the allegations.

In the case before the court, Heine asked, in substance, for a ticket for a passage by steamer to Bremen, and the paper in question was furnished to him.   Nothing was said by Gilbert, or by the prisoner, indicating whether it was or not such a

ticket, until after the money was paid. The paper in question was delivered to Heine, as the very article called for. No one said anything about the character of it. It was not necessary to defend it, or declare its character, until it was assailed or disputed. The part of an honest dealer was well acted, and, from the acts and facts of the case, the jury believed that the prisoner was " art and part" in the transaction. A falsehood can be acted as effectively, in many instances, as it can be spoken. This appears to be such a case, and this exception was not well taken.

The same argument applies to, and is a full answer to the fourteenth exception, which was made by the prisoner's counsel, on the refusal of the court to charge as requested, that the acts of the defendant, not being alleged in the indictment, could not be taken into consideration by the jury, and that the prosecution, having declared upon the paper, and not having set forth the acts, must be confined to the paper alone.

The thirteenth exception also arose upon the refusal of the court to charge the jury in conformity to the request of the prisoner's counsel.

The request was, that the court would direct the jury that there was a variance between the proof and the charge, as contained in the indictment; and that, in consequence of such variance, the defendant was entitled to an acquittal.

The argument urged for the prisoner is, that he has not been proven to be an actor in, or an abettor of, the offence of which he has been found guilty; that he did not understand German; that he did not know the contents of the certificate; that the paper itself gives notice that it must be exchanged; and that words or acts, which might be construed to pretend or represent that it was a ticket for Bremen, must not be so understood, because they are at variance with the import of the paper, and every person is required to exercise ordinary diligence and observation, and if Heine was deceived, it was the result of his own folly.

It has been already shown, in considering the first and

second exceptions, that there was sufficient evidence to require the court to submit to the jury the inquiry whether the prisoner and Gilbert were acting in concert. There was also a strong probability that Fowler had directed, or procured Gilbert to do and say what was, in fact, said and done during that transaction.

In the case of the *People* agt. *Adams*, (1 *Com.* 173), the defendant was held liable for obtaining money by false pretences, from merchants in this city, through the medium of an innocent agent, on a false receipt, stating that certain produce was in the defendant's possession, to be forwarded to the said merchants, although the defendant had never been in the state of New York.

That was a case in which the court considered the false pretences and representations alleged to be established by the acts of the defendant alone, where he was not even present when the fraud was consummated.

If the prisoner concerted with Gilbert a scheme to defraud any applicant for passage, which was put in execution in the manner complained of, or procured Gilbert to do it, then the offence charged is substantially proved.

It is not necessary, in an indictment for obtaining money on false pretences, to prove all the false pretences or representations alleged in the indictment.

If any material portion of them is proved, *it is sufficient.* (*Hill's case, Russ. & Ry.*, 190; 1 *Greenleaf's Ev.*, § 65.)

The material fact in this case was, the pretence or representation that the paper in question was a ticket for passage by steamer to Bremen. Some of the witnesses gave their opinion that the paper was a certificate or receipt, and not a ticket for passage.

The purport of the paper is a contract. It distinctly states that this (the paper) entitles the bearer to a passage this present voyage, &c.

It purports to be signed by the prisoner.

It is addressed also to the prisoner, and underneath is written, "Is to be exchanged," &c.

What is to be exchanged? Who is to make the exchange? When is the exchange to be made?—Even a diligent or observing person might be excused if he failed to perceive this memorandum at the bottom, after he had read the body of the paper, which expressly engages that he is entitled to the passage for which he had applied. There was nothing to call the attention of Heine to the memorandum. It does not purport to form any part of the contract, and is too indefinite to be the ground of a charge of folly against the deluded applicant for a passage, or as a defence for the artful instigator of the fraud and deceit.

The request of Gilbert to Heine, after he had paid his money, and was about leaving the office, to come the next day to be conducted to the steamer, does not help the prisoner's case. Heine did call the next day, and there was no evidence of any preparation to take him to any steamer, and no one suggested, that the steamer had left, or that he had come too late.

The refusal of the court to charge as requested was fully warranted, and the exception last mentioned, like the former ones, was not well taken.

The judgment of the court of oyer and terminer must be affirmed.